**Edward Joseph HELDMAN, on Behalf of his handicapped son, T.H., Plaintiff,**

v.

**Thomas SOBOL, Commissioner, New York State Education Department, Defendant and Third–Party Plaintiff,**

**The Board of Education of the Minisink Valley Central School District, Third Party Defendant.**

**No. 89 Civ 2378 (VLB).**

United States District Court, S.D. New York.

March 8, 1994.

Michael H. Sussman, Goshen, NY, for plaintiff.

Martha O. Shoemaker, Asst. Atty. Gen., New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This litigation involves a challenge to the impartiality of hearing officers reviewing school district decisions in relation to educational planning for handicapped children, brought by a parent under 20 U.S.C. 1415, New York Education Law 4404 and 8 NYCRR 200.5. Plaintiff Edward Joseph Heldman acting on behalf of his child T.H. alleged that the hearing officer selection system was inherently biased because some officers were beholden to the school boards involved, which might have to pay for any additional educational effort recommended by the hearing officer or resulting from the officer's findings. The suit was initially dismissed for lack of standing because no concrete adverse impact on the child had been shown. *Heldman v. Sobol,* 962 F.2d 148 (2d Cir.1992) reversed this dismissal and held that potential impact of an overall state policy sufficed to confer standing.

On July 21, 1993, the New York State Legislature enacted L.1993 ch. 403, amending Education Law 4404 to create a new rotation system for hearing officers, and mandate a plan to be adopted by July 1, 1996 precluding school board employees from serving as hearing officers until two years after leaving such employment, and to establish procedures for dismissal of hearing officers and maximum rates of pay for such officers.

Plaintiff's son T.H. reached age 21 on September 28, 1993 and would not appear to be covered any longer by Education Law 3202 or 4401. The effect of this on the current litigation need not, however, be considered. Plaintiff, who had moved for summary judgment, has determined

that his suit had achieved its principal objective—the alteration of an impermissible state adjudicatory mechanism—and agreed to withdraw his motion for summary judgment.[1]

Plaintiff now seeks attorney's fees and litigation costs; defendant resists that application and continues to pursue a cross-motion for summary judgment on the merits and based on mootness.

---

1. Plaintiff's Brief in Support of Motion for Attorneys' Fees and Litigation–Related Costs, Dkt. No. 54, 1/10/94.

Plaintiff's application is granted to the extent of 25% of the reasonable attorney's fees and litigation costs (hereinafter abbreviated as "fees") incurred, under the criteria discussed in part VI below. Defendants' motion for summary judgment on the merits is denied; their motion to dismiss this case as moot is granted except as to the application for fees.

## II

█ *Heldman v. Sobol,* 962 F.2d 148 (2d Cir.1992), by upholding plaintiff's standing, made plaintiff's challenge to the impartiality of hearing officers significant for the State and its Education Department. This was reflected in a memorandum in support of the 1993 legislation by the Division of the Budget, submitted to the Governor urging his signature of A.7189–A, stating in part:

Litigation is currently pending in the Second Circuit which questions the ability of a hearing officer to be impartial when selected and employed by the school district.

The Budget Division memorandum shows that plaintiff contributed to the enactment of the 1993 legislation sufficiently to qualify as a prevailing party entitled to reasonable attorneys' fees and litigation costs under 20 U.S.C. 1415(e)(4)(B), a statute analogous to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988.

█ A plaintiff is entitled to fees if the litigation contributed to "a resolution of the dispute which changes the legal relationship" involved, under *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989); see *Hensley v. Eckerhardt,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Koster v. Perales,* 903 F.2d 131, 134 (2d Cir.1990). It is enough if a suit is a "catalytic" factor in attaining that result, even if not a "necessary" or even "substantial" one; any of these factors is sufficient under *Gerena–Valentin v. Koch,* 739 F.2d 755, 559 (2d Cir.1984).

## III

█ The portion of a party's fees which may be recovered from the adversary must be calibrated to reflect the importance of the party's contribution to the ultimate result, and the aspects of the litigation effort which made that contribution. An all-or-nothing criterion is not to be applied under these circumstances. See *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); Callier, "When the Winning Party is Not the Prevailing Party," 66 Tul.L.Rev. 2067 (June 1992). It is increasingly recognized that events often do not always fit into neat "Yes or No" categories, and instead may fall on a spectrum between these extremes. See *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *TIAA v. Coaxial Communications,* 799 F.Supp. 16 (S.D.N.Y.1992); Holmes, "Law in Science—Science in Law," 12 Harv. L.Rev. 433 (1899), also in O.W. Holmes, *Collected Legal Papers* 210–43 (1921); Trevaskis, "Measure of Damages for Regulatory Takings," 3 Probate & Property No 2 at 17 (ABA Mar./Apr. 1989).

## V

█ Although catalytic, plaintiff's suit cannot be regarded as the primary trigger for the passage of the 1993 amendments. There is no indication that plaintiff or plaintiff's counsel were in touch with state authorities, legislators, or interested groups concerning the legislation. The Budget Division, while brought into the matter at the time of gubernatorial consideration of whether to sign or veto L.1993 Ch. 403, was only one of many agencies and interest groups involved in the legislation, and does not appear to have been involved until passage of the relevant bill by the Legislature.

A federal regulation issued under 20 USC 1401 *et seq,* provides that hearing officers cannot have "a personal or professional interest which would conflict with ... objectivity in the hearing." 34 CFR 300.507(a). The existence of this regulation would alone be enough to call the practice of utilizing school district employees as hearing officers into question. This regulation, far from being idiosyncratic, reflects a longstanding and accumulating recognition that such impartiality is necessary for fair adjudication generally.

■ Conduct of hearings by officers with a potential personal interest in the outcome is inherently suspect even though its validity may depend on the circumstances. At times mere removal from the immediate scene of a dispute may be sufficient. See *Russell v. Coughlin*, 910 F.2d 75, 77–78 (2d Cir.1990). Where financial factors may militate against a claim, possible bias is particularly troublesome.

Concern for protection of impartiality of legal decisionmaking has been recognized as crucial long before plaintiff's suit was filed. The question has, indeed, long been a subject of steadily increasing concern on the part of courts and other authorities at both federal and state levels. See, e.g., *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (jurist with financial interest in fines collected must be disqualified); *Steele v. Louisville & Nashville RR*, 323 U.S. 192, 206, 65 S.Ct. 226, 233–34, 89 L.Ed. 173 (1944) (adjustment board with union and management representation cannot rule on dispute between employees and both institutions); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (competitor sitting on license revocation panel considering action against rival); *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (impartiality requirements for arbitrators); *Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (impartiality required of private prosecutor in contempt case); *GMC v. Rosa*, 82 N.Y.2d 183, 604 N.Y.S.2d 14, 624 N.E.2d 142 (1993) (interested official cannot act if authority can be delegated to neutral person); *Syquia v. Board of Education*, 80 N.Y.2d 531, 591 N.Y.S.2d 996, 606 N.E.2d 1387 (1992) (overpayment of member of tripartite panel by an institutional participant voids the result); *Soam Corp. v. Trane Co.*, — A.D.2d ——, 608 N.Y.S.2d 177 (1994) (weight accorded to testimony of impartial as contrasted with interested witness).

See also United Nations Universal Declaration of Human Rights art. 10 (1948) ("Everyone is entitled ... to a fair ... hearing by an independent and impartial tribunal in the determination of ... rights and obligations.")[2]

Moreover, concern about impartiality has become increasingly focused upon administrative action. See *FTC v. Elders Grain, Inc*, 868 F.2d 901, 905 (7th Cir.1989); Committee on Trade Regulation, "Federal Trade Commission Procedure for Issuance of Complaints," 30 Record Ass'n Bar City of N.Y. 213 (1975); Report of the American Bar Ass'n Commission to Study the Federal Trade Commission 81–83 (1969) (Kirkpatrick Commission); 29 U.S.C. 153(d) (General Counsel of National Labor Relations Board appointed separately from Board members); Jaffe, "The Effective Limits of the Administrative Process: A Reevaluation," 67 Harv. L.Rev. 1105 (1954).[3]

This concern has become steadily more acute in New York in particular. *GMC v. Rosa*, 82 N.Y.2d 183, 604 N.Y.S.2d 14, 624 N.E.2d 142 (1993); *Syquia v. Board of Education*, 80 N.Y.2d 531, 591 N.Y.S.2d 996, 606 N.E.2d 1387 (1992). The New York State Bar Association's Task Force on Administrative Adjudication has released reports severely criticizing State administrative agencies for lack of impartiality in adjudication processes.[4]

New York has also sought increased consultation rather than one-way bureaucratic decisionmaking in educational policy generally. See Education Law 215–a, enacted in 1991.

2. The roots of insistence on impartiality in legal decisionmaking extend as far back as the Great Charter of King John (1215) (Magna Carta), which provides in Article 24: "No sheriff, constable, coroner, or other bailiffs, shall hold pleas of the Crown."

3. See also *Franks v. Sullivan*, 802 F.Supp. 1067 (S.D.N.Y.1992); *DeRico v. IBM*, 1993 WL 106799, 1992 U.S.Dist. LEXIS 4546, Dkt. No. 93 Civ. 0823 (S.D.N.Y. 4/6/93); *Pagan v. NYNEX*, 846 F.Supp. 19 (S.D.N.Y. 1994).

4. The New York City Administrative Procedure Act, added by the voters in 1988 as New York City Charter Ch. 45, requires hearing officers to be assigned solely to adjudicative duties (§ 1046(e)) and bars *ex parte* internal memoranda from being furnished to adjudicators. § 1046(c)(1).

These trends led to focus on the current issue in the form of hearings throughout the state held by the Office of Special Education Services in 1990 leading to recommendations incorporated in the statutory amendment; neither plaintiff nor plaintiff's counsel participated. Affidavit of James Viola, 2/4/94.

Under all the circumstances, enactment of the 1993 amendments to Education Law 4404 appears to have been likely and perhaps inevitable without regard to the impact of any single influence. Plaintiff's contribution through pursuit of this litigation, while doubtless catalytic, cannot have been primarily responsible for the outcome.

## V

■ Defendants' motion for summary judgment on the merits appears primarily directed toward preventing plaintiff from qualifying as a moving party and thereby being entitled to legal fees and other litigation expenses. Whether a motion can properly be granted where that is the sole or dominant purpose need not be determined, because defendants' motion with respect to the merits cannot be granted in any event. The effect of the 1993 amendments to Education Law 4404 and the degree of impartiality which may be provided by school board employees serving as hearing officers prior to 1996 has not yet been tested through either pragmatic experience or judicial examination. Further inquiry would be necessary to determine whether or not the State hearing officer system under Education Law 4404 meets the applicable criteria under 34 CFR 300.507(b) and the authorities cited above during the transition period prior to 1996.

■ Defendants' motion to dismiss on the ground of mootness, however, must be granted inasmuch as plaintiff has stated that the objectives of the litigation have been achieved. In light of this, no case or controversy under Article III appears to exist. See *Arthur v. Community Advisory Board*, 12 F.3d 377 (2d Cir.1993).

## VI

■ In light of plaintiff's catalytic but far from dominant contribution to the 1993 amendments to Education Law 4404, the proportion of the attorney's fees and other litigation costs resulting in plaintiff's success in obtaining a favorable ruling on standing in *Heldman v. Sobol*, 962 F.2d 148 (2d Cir.1992) which should be awarded cannot be determined with precision. Such judgments must be based on familiarity with the case and such matters generally. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992). One-fourth of such expenditures on aspects of the case relevant to the impact on the legislation is appropriate.

■ Success in obtaining the favorable standing ruling dependent on effective legal analysis and argument, would justify the hourly rates claimed for plaintiff's counsel and costs for travel time to and from the Second Circuit argument, but would not justify fee shifting for work done after the Second Circuit decision.

■ While it is undisputed that paralegal work may qualify for fee shifting awards, no such payment can be awarded to plaintiff for his own work as a paralegal in his own case. Otherwise time spent by clients in support of their own litigation would become a major additional cost to be imposed on their adversaries, thereby adding a currently absent additional encouragement to litigation generally—something there is no suggestion that Congress intended in enacting fee-shifting legislation. See *Kay v. Ehrler*, 499 U.S. 432, 433–37, 111 S.Ct. 1435, 1436–37, 113 L.Ed.2d 486 (1991) (*pro se* litigants cannot obtain legal fees under 42 USC 1988); *Morales v. Turman*, 820 F.2d 728 (5th Cir.1987) (*amicus* volunteer).

## VII

The parties are directed to attempt to agree on a recomputation of plaintiff's attorney's fee and litigation expense request in accordance with these criteria. The parties shall inform the court in writing within 30 days of the date of this memorandum order whether or not such settlement had been reached, and if not what means of settlement have been discussed. If settlement cannot be achieved, one or more proposed judgments concerning the fee matter shall be

submitted on a date to be established by the court at that time. Final judgment dismissing this case as moot shall accompany the judgment as to the fee issue.[5]

SO ORDERED.

5. Such final judgment will be deferred pending resolution of the fee issue. Pendency of the motion with respect to fees shall have the same effect under Fed.R.App.P. 4(a)(4) as a timely motion under Fed.R.Civ.P. 59. See Fed.R.Civ.P. 58 (1993 amendment).