**MAX PLANCK GESELLSCHAFT ZUR FOEDERUNG DER WISSENSCHAFTEN, E.V., Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**No. 93 Civ 7171 (VLB).**

United States District Court, S.D. New York.

July 1, 1994.

Order Granting Reconsideration and Reaffirming Decision July 22, 1994.

Arnold Sprung, Nathaniel Kramer and Ira J. Schaefer, Sprung Horn Kramer & Woods, Tarrytown, NY, for plaintiff.

David M. McConoughey, Wyatt, Gerber, Burke & Badie, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This patent litigation pits an international nonprofit educational organization involved in advanced technological research on a worldwide basis, with its principal headquarters in Germany, against General Electric Company ("GE"), a major user as well as developer of advanced technologies in numerous fields.

The defendant General Electric has moved under 28 U.S.C. § 1404(a) to transfer the suit from this district to the Eastern District of Wisconsin where the allegedly infringing products were manufactured and where a prior-filed declaratory judgment suit (the "Milwaukee action") initiated by General Electric is pending. Plaintiff ("Max Planck") has moved to dismiss the Wisconsin litigation for lack of personal jurisdiction over it.

General Electric's motion to transfer is granted, subject to the conditions set forth below.

### II

General Electric is incorporated in New York, but its only manufacturing of the allegedly infringing items has taken place in the

Milwaukee area where the devices were also designed. Meetings between the parties took place in Milwaukee.

Max Planck has no significant activities in the United States, but plans to call expert witnesses more readily accommodated in the Southern District of New York, where a former lawsuit involving the same patent was brought and settled. *Max–Planck v. North American Philips,* 90 Civ. 6147, 1991 WL 177255 (S.D.N.Y.1991).

### III

■ There is authority militating against transfer of a case to a forum in which an earlier suit was held improper, *Parham v. Edwards,* 346 F.Supp. 968 (S.D.Ga.1972), *aff'd.* 470 F.2d 1000 (5th Cir.1973).[1] *Parham* involved a statute of limitations issue, which the party seeking to revive the rejected forum wished to have decided in a favorable forum. Courts are reluctant to permit forum shopping or to allow a party to attempt to reinstate a case in a forum already rejected by the court or the party involved. *In re New York Trap Rock,* 158 B.R. 574 (S.D.N.Y. 1993).

■ At this juncture, however, the court in GE's Milwaukee action against Max Planck has not yet determined whether to dismiss or transfer that suit. Moreover, dismissal or transfer for lack of personal jurisdiction over Max Planck in Milwaukee would be irrelevant to the issue of convenience under 28 U.S.C. § 1404(a), since Max Planck as plaintiff could bring its action wherever jurisdiction over the defendant was available and venue proper.

Uncertainty as to whether or not the court will retain the Milwaukee action, and the undesirability of delaying ruling on the present motion tends to undermine GE's contention that its choice of the Milwaukee forum should control, as well as Max Planck's contention that its possible rejection should be binding. The first-filing rule is not a wooden one to be mechanically applied. See *Big*

*Baby Co v. Schecter,* 812 F.Supp. 442 (S.D.N.Y.1993).

Consequently the factors of convenience relevant under 28 U.S.C. § 1404(a) control the disposition of the current motion.

### IV

■ Prior experience with the patent involved in this district is also irrelevant. To rule otherwise would be to denigrate the generalist nature of the United States district courts and permit a party with a series of cases of a given type to have the advantage of the equivalent of a specialized judiciary at the district court level to handle such cases. Creation of specialized courts is the prerogative of Congress, not assigned to the courts themselves.

Were familiarity of a court with a specific patent to be given weight, the party involved would have knowledge of prior rulings unknown to opposing counsel as well as a special relationship with the court—a situation unavoidable in some circumstances such as where a prosecutor necessarily appears repeatedly before the court for the jurisdiction involved, but which need not deliberately be created. Any weakening of the appearance as well as reality of impartiality is detrimental to the objectives of Article III of the Constitution. See authorities cited, *Heldman v. Sobol,* 846 F.Supp. 285 (S.D.N.Y. 1994).

### V

■ A specific patent venue provision contained in 28 U.S.C. § 1400 provides:

(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

This provision, however, has been held to be superseded in cases involving corporate defendants by 28 U.S.C. § 1391(c) as amended

---

**1.** Max Planck also cites decisions referred to solely by docket number which appear distinguishable and furthermore are only available in the court file and neither in published form nor currently available data bases. Use of inside information of this type not generally known and where not *res judicata* or otherwise specifically binding may tend to skew the development of the law. See *Schueler v. Roman Asphalt Corp.,* 827 F.Supp. 247 (S.D.N.Y.1993).

in 1988. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574 (Fed.Cir.1990), *cert. denied* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). The 1988 amendments expanded venue for cases against corporate defendants to embrace any district in which personal jurisdiction over the corporation could be obtained. This dramatic expansion of venue for suits against corporations necessarily places greater stress on supervision of forum selection under 28 U.S.C. § 1404(a), relating to transfer for convenience. However, in light of GE's significant activities in the Southern District of New York, its motion under Fed.R.Civ.P. 12(b) to dismiss for lack of personal jurisdiction, and for improper venue notwithstanding 28 U.S.C. § 1391(c) is denied.

## VI

■ The special patent venue statute (28 U.S.C. § 1400), although not binding in light of the applicability of 28 U.S.C. § 1391(c), and although satisfied as to this district by GE's incorporation in New York, suggests that at least some weight may properly be given to the locale of alleged infringement. The development of the allegedly infringing device also occurred in Wisconsin, and witnesses involved in the allegedly infringing activities are more available to both parties in Wisconsin than in New York.

Absence of any substantial connection of Max Planck with New York other than prior litigation here involving other defendants and its preference for expert witnesses that this area provides constitutes provides no offset to the factors favoring Wisconsin. Venue in the location of expert witnesses necessarily generates a tendency to develop a special connection between a district where the experts in a particular controverted subject are located and the type of case involved, generating a potential for abuse. See *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521 (D.C.Cir.1985) (R. Ginsburg, J.).

Awareness of the risk of permitting litigation deliberately to be concentrated where potentially partisan experts may be located is heightened by enhanced awareness of distor-

tions involving partisan experts generally, as reflected in 1993 amendments to Fed. R.Civ.P. 26(a)(2), 26(b)(4), 37(c)(1) and Fed. R.Evid. 705, together with accompanying Advisory Committee Notes to each. See generally *Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Trower v. Jones,* 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988); Committee on Product Liability, "Discovery of Expert Witnesses Under Federal Rule 26," 44 Record Ass'n Bar City of N.Y. No. 5 at 534 (June 1989); Burk, "When Scientists Act Like Lawyers," 33 Jurimetrics J. No. 3 at 363 (ABA Spring 1993); see also Foster, "Expert Testimony," 11 Harv.L.Rev. 169, 184–85 (1897).

## VII

The imbalance between the legitimately case-specific factors showing convenience in Wisconsin and the desire of Max Planck to utilize experts located in the New York area indicates that all relevant factors strongly and compellingly favor transfer to Wisconsin. *Filmline (Cross–Country) Productions v. United Artists,* 865 F.2d 513, 521 (2d Cir. 1989). It would not do for a patentee to select a forum based on availability of its own experts there, where all other relevant events occurred half a continent away.

## VIII

Although convenience decisively favors Wisconsin over New York as the proper venue for this litigation, it would be inequitable for the transfer to deprive Max Planck of availability of expert testimony in its favor because of the difficulty of arranging for time-consuming travel of scientists with other obligations. Accordingly, transfer will be conditioned upon agreement by GE to waive any objection to, or possible adverse inference from, use by Max Planck at trial of deposition testimony—videotaped if desired by GE—of any of Max Planck's experts located closer to New York City than to Milwaukee at trial.[2]

## IX

Disputes between entities of this stature can consume significant resources otherwise

---

2. It will be the responsibility of counsel for GE to file a formal acceptance of these terms within ten

(10) working days of the date of this memorandum order.

available to the combatants and inhibit collaboration in technological areas that can benefit both the parties and the public as well as the international community. See National Cooperative Research Act, 98 Stat. 1815 (1984), 15 U.S.C. §§ 4301–4305, as amended in 1993; 42 U.S.C. §§ 6686–87 (formulation of national technological objectives); 10 U.S.C. § 2521 (defense-related technological goals); Technology Assessment Act, 2 U.S.C. § 471 *et seq.;* authorities cited, *Suss v. ASPCA,* 823 F.Supp. 181, 184–85 & nn. 2–6 (S.D.N.Y.1993).

While settlement efforts have been pursued, a situation more conducive to resolution may have been created as a result of the current decision. Because of the public interest as well as the obvious interest of the parties in resolving disputes of this kind,[3] it is appropriate to delay implementation of the transfer of this case for a twenty (20) short period during which such matters may be canvassed.

## X

Unless otherwise ordered, the clerk is directed to transfer this case to the United States District Court for the Eastern District of Wisconsin twenty (20) working days after the date of this memorandum order.

SO ORDERED.

## ORDER GRANTING RECON-SIDERATION and REAF-FIRMING DECISION

### I

Plaintiff in this international patent litigation has moved for reconsideration of a decision dated July 1, 1994 (the "July 1 decision") transferring the case to the Eastern District of Wisconsin for convenience pursuant to 28 U.S.C. § 1404(a).[1]

A declaratory judgment suit was brought in the Eastern District of Wisconsin by General Electric against Max Planck Gesellschaft (the plaintiff in the present suit in the Southern District of New York), which Max Planck Gesellschaft moved to dismiss for lack of personal jurisdiction over it.

Reconsideration is granted and the prior decision directing transfer reaffirmed, and will be effective immediately.

### II

Plaintiff sought to show that the Southern District Court would be a convenient forum for this litigation because witnesses familiar with the technologies involved are located in this region. The July 1 decision indicated that concentrating a particular type of litigation where specific types of experts may be located would be inappropriate and not conducive to neutrality in adjudication. Plaintiff in its motion contends that the witnesses involved are fact witnesses who would testify concerning commercial success of the patent in suit and failure of others to make the patented invention. Such witnesses are not testifying about what was done by the plaintiff or defendant in this case, but about generalized matters affecting the industry involved. Whether or not they are expert witnesses in the sense that term is used in Fed.R.Evid. 701–706, such witnesses are not fact witnesses who actually observed conduct of the parties, but are experts in the general field of activity.

Plaintiff stresses the availability of subpoena power over such witnesses in this district, making the assumption that compulsory process would be required. Plaintiff seeks to ignore the availability of deposition testimony by assuming that it is ineffective in a jury trial, not giving recognition to the availability of videotape depositions under Fed.R.Civ.P. 30(e)(2) and (3); see also Fed.R.Civ.P. 32(c). A case such as this, involving equally well-funded sophisticated adversaries, does not present the problems sometimes created when uneven financial impact makes videotaping a less than neutral procedure.

---

**3.** Congress has specifically authorized arbitration of patent disputes in 35 U.S.C. § 294. One of the methods available for resolution of such disputes is a single arbiter chosen by the parties by name and endowed with power to conduct independent inquiries as well as to develop a fair solution.

**1.** *Max Planck Gesellschaft v. General Electric,* 858 F.Supp. 380 (S.D.N.Y.1994).

Making convenience of producing such witnesses a factor in venue selection would lead to the very evil sought to be avoided by the July 1 order: establishing a preeminent district for a particular type of lawsuit where those with special familiarity with the subject are located.[2]

### III

Plaintiff argues that "mere manufacture of a device" in Wisconsin "does not constitute infringement" by the defendant of plaintiff's process patents, thus challenging Wisconsin as an appropriate forum. This ignores the fact that manufacture is an essential key step in utilizing a process, the marketing and use of the device being an inevitable consequence.

### IV

■ Plaintiff repeats its contention that "authority militating against transfer of a case to a forum in which an earlier suit was held improper" is applicable here. This argument has no merit because the sole barrier in Wisconsin (if found) would be that Max Planck Gesellschaft (defendant in the declaratory judgment action) is not subject to personal jurisdiction there. Where, as in the present case, plaintiff is bringing the suit, it need not also be subject to personal jurisdiction, which is required in order *to be sued.*

Instead, plaintiff seeks to apply wording used to describe a jurisdiction found inappropriate for a lawsuit to a situation where the reasons would be irrelevant. Applying language beyond its intended purpose is a long-recognized error. See *The Federalist No. 37* (Madison); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 678, 70 S.Ct. 876, 882–

83, 94 L.Ed. 1194 (1950); *Avis Rent a Car System v. Hertz Corp.,* 782 F.2d 381, 385–86 (2d Cir.1986) (Friendly, J.); O.W. Holmes, *Collected Legal Papers* 232–33, 251–52 (1921). "The life of doctrinal formulations is in their applications." Powell, "More Ado About Gross Receipts Taxes," 60 Harv. L.Rev. 710 (1947).

In order to avoid unnecessary delay, it is prudent to rule now that should the Wisconsin case be dismissed on grounds of lack of personal jurisdiction over the plaintiff here as a defendant in the declaratory judgment suit in Wisconsin, before the present transfer order is implemented, the transfer will proceed nevertheless.

SO ORDERED.

---

2. Such concentration of influence would run counter to one of the objectives of our large republic: precisely to avoid excesses in such influence. See *The Federalist No. 10* (Madison).

While experts (in the generic sense) are vital to a complex technological society, they cannot necessarily be counted upon for impartiality merely because of their knowledgeability. See generally *Daubert v. Merrell Dow,* — U.S. —, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Trower v. Jones,* 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988); Casper, "Technology Policy and Democracy: Is the Proposed Science Court What We

Need?," 194 Science 29 (Oct. 29, 1976); Weinberg, "The 'Science Court' Controversy," 33 Rec. Ass'n Bar City of N.Y. 8 (Jan./Feb. 1978); Jaffe, "The Effective Limits of the Administrative Process: A Reevaluation," 67 Harv.L.Rev. 1105 (1954); Jaffe, "The Illusion of the Ideal Administration," 86 Harv.L.Rev. 1183 (1973); Committee on Product Liability, "Discovery of Expert Witnesses, Under Federal Rule 26," 44 Record Ass'n Bar City of N.Y. #5 at 534 (June 1989), contributing to the 1993 amendments to Fed. R.Civ.P. 26 concerning experts. See also Foster, "Expert Testimony," 11 Harv.L.Rev. 169, 184–85 (1897).