■ In the Matter of MARIE R. BROWN, Respondent, v BRIAN J. WING, as Acting Commissioner of the New York State Department of Social Services, Appellant, et al., Respondent. [675 NYS2d 103] —In a proceeding pursuant to CPLR article 78 to review a determination of the Acting Commissioner of the New York State Department of Social Services, dated April 18, 1996, made after a hearing, which upon a determination to limit the petitioner's medical assistance coverage, calculated the petitioner's medical assistance ineligibility period from the first day of the month following her transfer of assets for less than fair market value and imposed a partial month penalty, the appeal is from a judgment of the Supreme Court, Suffolk County (Hall, J.), entered April 24, 1997, which granted the petition and directed the recalculation of the penalty period.

Ordered that the judgment is modified by deleting the fourth

decretal paragraph thereof which directed that the recalculation be made in accordance with Administrative Directive 92 ADM-38, which does not permit the imposition of a partial month penalty, and substituting therefor a provision permitting the imposition of a partial month penalty upon the recalculation of the penalty period; as so modified, the judgment is affirmed, with costs to the appellant.

The petitioner, Marie R. Brown, was institutionalized on February 2, 1995. She applied to the Suffolk County Department of Social Services (hereinafter the Suffolk County DSS) for medical assistance on April 26, 1995, requesting that her date of eligibility be set as May 1, 1995. On October 25, 1995, her application was approved, but with an eligibility date of August 1, 1995. According to the Suffolk County DSS, the petitioner had transferred nonexempt resources in the amount of $47,073.50 from November 1994 through March 1995, and was thereby subject to a period of ineligibility. The Suffolk County DSS calculated the petitioner's period of ineligibility by dividing the total value of the uncompensated nonexempt transfers by the regional rate, for a total period of 8.46 months of ineligibility, which it determined would commence December 1994, the month following the initial nonexempt transfer. The determination was upheld following a fair hearing, and the petitioner commenced the instant proceeding, in which she disputes the calculation of the penalty period from December 1994 rather than November 1994, and the imposition of a partial month penalty.

New York's Medical Assistance plan (hereinafter Medicaid), which is jointly funded by this State as well as the Federal Government, must conform to Federal statutory standards in order for the State to receive Federal program funding (see, Matter of Golf v New York State Dept. of Social Servs., 91 NY2d 656). The Medicaid program is administered by the United States Department of Health and Human Services, under the auspices of the Federal Health Care Financing Administration and locally, by the New York State Department of Social Services (hereinafter the State DSS) (see, Matter of Golf v New York State Dept. of Social Servs., supra). The penalty provisions for transferring non-exempt resources for less than their fair market value, affecting the Medicaid eligibility of institutionalized individuals, are found in Social Services Law § 366 (5) (d), L 1994, ch 170, and 18 NYCRR 360-4.4 (c) (2). These provisions were enacted to conform with the Federal statutory amendments to title XIX of the Social Security Act (42 USC § 1396 et seq.), and are included in the Federal Omnibus

Budget Reconciliation Act of 1993 (hereinafter OBRA 1993), codified at 42 USC § 1396p (*see, Matter of Golf v New York State Dept. of Social Servs., supra*).

Pursuant to Social Services Law § 366 (5) (d) (3) and 18 NYCRR 360-4.4 (c) (2) (ii), in determining the Medicaid eligibility of an institutionalized individual, any transfer of assets for less than fair market value made by the individual within or after the 36-month look-back period immediately preceding the date that the individual is both institutionalized and applies for Medicaid, renders that individual ineligible for nursing facility services. Accordingly, any prohibited transfer of assets made by the petitioner within 36 months of April 26, 1995, the date that she both was institutionalized and had applied for Medicaid, would render her ineligible to receive Medicaid benefits during a penalty period. The "period of ineligibility shall begin with the first day of the first month during or after which assets have been transferred for less than fair market value, and which does not occur in any other periods of ineligibility" (Social Services Law § 366 [5] [d] [4]; 18 NYCRR 360-4.4 [c] [2] [iv] [b]).

The State DSS contends that the plain and obvious meaning of Social Services Law § 366 (5) (d) (4), that "the period of ineligibility shall begin with the first day of the first month during or after which assets have been transferred" unequivocally gave it the option to commence ineligibility for Medicaid on the first day of the first month during or after which the non-exempt resources had been transferred. Although the construction afforded a particular statute by the agency responsible for its administration is entitled to the greatest weight (*Matter of Tommy & Tina, Inc. v Department of Consumer Affairs,* 95 AD2d 724, *affd* 62 NY2d 671, quoting *Matter of Herzog v Joy,* 74 AD2d 372, 375), and should be upheld if not irrational or unreasonable (*see, Matter of Johnson v Joy,* 48 NY2d 689, 691; *Matter of Bernstein v Toia,* 43 NY2d 437, 448; *Matter of Howard v Wyman,* 28 NY2d 434, 438; *Matter of Allstate Ins. Co. v Libow,* 106 AD2d 110, 118-119, *affd* 65 NY2d 807), such is not always the case "[w]hen 'the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent'" (*Matter of Rho v Ambach,* 74 NY2d 318, 321, quoting *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). In that situation, "'there is little basis to rely on any special competence or expertise of the administrative agency'" (*Matter of Rho v Ambach, supra,* at 321, quoting *Kurcsics v Merchants Mut. Ins. Co., supra*) because "statutory construction is the function of the courts" (*Matter of Mounting & Finish-*

*ing Co. v McGoldrick,* 294 NY 104, 108; *see, Matter of Rho v Ambach, supra,* at 321; *Matter of Howard v Wyman, supra,* at 438).

We agree with the petitioner that the State DSS interpretation of Social Services Law § 366 (5) (d) (4) and 18 NYCRR 360-4.4 (c) (2) (iv) (b) is contrary to the legislative intent as expressed in the legislative history set forth in the House Report and the House Conference Report to OBRA 1993, as well as the New York State Register. The House Report to OBRA 1993 indicated that "[t]he period during which benefits are denied will begin with the *date on which* the prohibited *transfer occurred*" (HR Rep No. 103-111, 103d Cong, 1st Sess 206, reprinted in 1993 US Code Cong & Admin News 378, 573 [emphasis added]; Pub L 103-66, 107 US Stat 312). Similarly, in the House Conference Report, the eligibility sections of the Medicaid provisions provide, in relevant part, that "[t]he period of delay begins with the first month *during which* the assets were disposed of" (HR Conf Rep No. 103-213, 103d Cong, 1st Sess 834, reprinted in 1993 US Code Cong & Admin News 1088, 1523 [emphasis added]; Pub L 103-66, 107 US Stat 312). Additionally, an examination of the New York State Register, which, *inter alia,* proposed an amendment to 18 NYCRR 360-4.4, further supports the petitioner's reading of the statute (NY Reg, Sept. 28, 1994, at 37-41). According to the legislative history, "[t]he proposed regulatory amendments would provide for a new transfer rule, applicable to transfers made on or after August 11, 1993" so that "a single period of ineligibility would be calculated", and further that the "period of ineligibility would run from the first day of the first month in which a transfer was made". (NY Reg, Sept. 28, 1994, at 40.) In view of the fact that Congress has spoken on this particular issue, this Court must give effect to the unambiguously expressed intent of the Congress (*see, Chevron U.S.A. v Natural Resources Defense Council,* 467 US 837).

In addition, when the language at issue, "during or after which", is read in conjunction with the language immediately following it, and which does not occur in any other periods of ineligibility under this paragraph, it is clear that the transfer penalty date must begin during the month in which the assets were transferred. The statutory language "or after which" was included to prevent the overlapping of penalty periods (*see,* Medicaid Manual § 3258.5 [C]; Weisner, Planning for Disabled and Incapacitated Persons: Rules You Must Know, 248 PLI/EST 179, 194). Therefore, the Supreme Court properly directed the State DSS to recalculate the petitioner's penalty period,

starting the penalty period in the month of transfer, which was November 1994.

With respect to the partial month penalty imposed upon the petitioner, various social services districts were advised by General Informational Statement 95 MA/038 (hereinafter the GIS) that if the penalty period resulted in a partial month penalty, they must count the uncompensated value of the transfer attributable to the partial month as part of the Net Available Monthly Income, which the institutionalized individual is required to contribute to the cost of nursing home care before becoming eligible for Medicaid in that month. The GIS comported with the State Medicaid Manual issued in November 1994, which stated in section 3258.5 (D) that "[w]hen the amount of the transfer is less than the monthly cost of nursing facility care, you have the option of * * * imposing a penalty for less than a full month". The GIS, which was transmitted on October 27, 1995, stated that it was effective August 11, 1993, and for all Medicaid applications received on or after September 1, 1994. Prior to that time, Administrative Directive 92 ADM-38 provided that "[w]hen calculating the duration of a penalty period, the period begins with the month in which the resources were transferred * * * If a calculation of the penalty period results in a partial month, the days must be rounded down to the end of the preceding month". Here, the petitioner applied for Medicaid on April 26, 1995. Given that the petitioner's application was submitted after September 1, 1994, the date on which the imposition of a partial month penalty was effective, the Supreme Court incorrectly held that the imposition by the respondent of the partial month penalty was improper. Miller, J. P., Copertino, Thompson and Sullivan, JJ., concur.