OPINION OF THE COURT
John P. DiBlasi, J.
This State’s Public Health Law provides for the award of counsel fees to a parent who has “substantially prevailed” at a hearing under the Individuals with Disabilities Education Act (IDEA). [1] In what appears to be a case of first impression in this State, this court must determine whether counsel fees may be awarded to either of the parents of a child who prevail at such a hearing where one of them is a partner in the law firm which was “retained” to represent their interests and those of their child at the hearing. Based upon the analysis which follows, this court concludes that counsel fees are not permitted in such a situation, and dismisses this petition.
I. FACTUAL BACKGROUND
Petitioners Gary S. Mayerson and Lilli Mayerson are the parents of a three-year-old son who is autistic. As concerned parents, they sought to obtain appropriate early intervention services for their child from respondent Westchester County Department of Health (the County). When they found that the services offered were not sufficient to address the significant educational needs of their child, they attempted to resolve their differences with the County through mediation. Finally, when they realized that no satisfactory resolution of the matter could be reached, they requested and obtained an impartial hearing (the Hearing) which was held before Administrative Law Judge Gerald H. Liepshutz (the ALJ).
The Hearing took place over the course of nine days. For the most part, Mr. Mayerson conducted the actual representation of petitioners and their child, although at least during his testimony, the questioning was conducted by an associate of the firm of Graubard, Mollen & Miller (GMM), of which Mr. Mayerson is a partner. At the conclusion of the Hearing, the ALJ ruled in favor of petitioners.
*57 Recognizing that Public Health Law § 2549 (7) (b) mandates the payment of reasonable attorney’s fees in a case such as this where petitioners had “substantially prevail[ed]” at an impartial hearing, the ALJ provided the parties with an opportunity to present written submissions as to the issue of petitioners’ entitlement to the fees for the services of Mr. Mayerson and GMM. Upon his review of those submissions, the ALJ rendered a decision and order dated May 23, 1997 denying the counsel fees request in all respects (the Fee Decision). In reaching that decision, the ALJ relied upon three points: (1) petitioners could not recover fees under section 2549 (7) (b) because they had not actually incurred any legal fees; (2) petitioners were really pro se litigants represented by Mr. Mayerson and not GMM; and (3) no fees were recoverable under the reasoning of the United States Supreme Court case of Kay v Ehrler (499 US 432 [1991]). This proceeding followed.
II. THE STATUTORY FEE PROVISION
To achieve the goals established for IDEA and pursuant to its obligations as a recipient of Federal funds, this State has created a procedure for addressing the early intervention educational needs of children in article 25, title II-A of the Public Health Law. That title, designated the “Early Intervention Program for Infants and Toddlers with Disabilities and Their Families” (Public Health Law § 2540 et seq. [hereinafter the ÉIP]), establishes an early intervention program, along with procedures for significant parental involvement in the creation of specific programs tailored to the educational needs of individual children.
Under the EIP’s “Due Process” section (Public Health Law § 2549), parents of disabled children are granted various procedural routes to follow when they do not agree with the programs offered for their children. These procedures include both mediation and, as involved at bar, an impartial hearing before a Hearing Officer.
In obvious recognition of the difficulties and expenses which arise from the pursuit of the educational rights of a child as established under IDEA and the EIP, in section 2549 (7) (b) the Legislature created a statutory right to attorney’s fees in favor of a parent who is successful in a challenge to an intervention plan which he or she deems insufficient to meet a child’s needs. Insofar as relevant, section 2549 (7) (b) provides that: “A parent who, after completing mediation, substantially prevails in an impartial hearing or a judicial challenge to an *58 order or determination under this title shall be entitled to reimbursement for reasonable attorney’s fees incurred in such impartial hearing or judicial challenge provided, however, that the parent shall only be entitled to reimbursement for such fees for prevailing in an impartial hearing if the municipality was represented by an attorney at such impartial hearing.” (Emphasis supplied.) At bar, it is conceded that the County was represented by an attorney at the Hearing and that the ALJ found that petitioners had substantially prevailed at that proceeding. Consequently, absent other considerations, petitioners must be awarded counsel fees pursuant to section 2549 (7) (b).
III. STANDARD OF REVIEW
In opposing the relief sought by petitioners, both the State respondents, i.e., the New York State Department of Health and its Commissioner, Barbara A. DeBuono, M.D. (together, the State), and the County, argue that this court’s review of the ALJ’s determination is limited. In particular, they contend that the denial of counsel fees to petitioners must be upheld if there is a rational basis for the ALJ’s decision.
As a general proposition, “[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). Consequently, “the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld” (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971], rearg denied 29 NY2d 749 [1971]).
However, this rule of deference to an agency interpretation does not apply where “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent” (Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 676 [3d Dept 1981], affd sub nom. Matter of Metropolitan Life Ins. Co. v State Tax Commn., 55 NY2d 758 [1981]; Kurcsics v Merchants Mut. Ins. Co., supra). In such situations, “there is little basis to rely on any special competence or expertise of the administrative agency” and its interpretation of a statute is “to be accorded much less weight” {see, Kurcsics v Merchants Mut. Ins. Co., supra, 49 NY2d, at *59 459). This is true because “ ‘statutory construction is the function of the courts’” (Matter of Brown v Wing, 251 AD2d 572, 574 [2d Dept 1998]).
In the proceeding at bar, the ALJ reached his decision on the counsel fees issues based, in part, upon his factual findings as to the role played by Mr. Mayerson in the underlying administrative proceeding. The ALJ described Mr. Mayerson’s involvement as follows: “Mr. Mayerson handled virtually all aspects of the hearing on behalf of the Petitioners. He presented an opening statement, conducted direct and cross examination of witnesses, argued legal issues and presented nearly all of the written arguments submitted during the hearing process.” (Petitioners’ exhibit A, decision and order, dated May 23, 1997, at 3.) Because his interpretation and application of section 2549 (7) (b) depended, at least in part, upon these factual findings, the court agrees with the State and the County that the Fee Decision must be upheld unless petitioners establish that the ALJ’s interpretation was “irrational or unreasonable” (Matter of Howard v Wyman, supra, 28 NY2d, at 438). Having reached that conclusion, the court now turns to the three branches of the ALJ’s decision.
V. PRO SE REPRESENTATION
The ALJ also based the Fee Decision on two more grounds. First, he ruled that petitioners were, in fact, pro se litigants represented by Mr. Mayerson and not by GMM. Second, he deemed the decision in Kay v Ehrler (449 US 432, supra) as persuasive authority for the proposition that under section 2549 (7) (b) legal fees should not be granted to a pro se litigant who is also a lawyer. The court now addresses these closely related grounds.
A. Bar Against Award of Fees to Pro Se Attorney
Although it was set forth as the third point in the Fee Decision, the court turns next to the ALJ’s conclusion that petitioners may not be awarded counsel fees under the rule espoused by the United States Supreme Court in Kay v Ehrler (supra). This court agrees with the ALJ that Kay v Ehrler provides persuasive support for the conclusion that if petitioners’ representation by Mr. Mayerson constituted pro se representation, neither petitioner is entitled to an award of counsel fees under section 2549 (7) (b).
Prefatorily, the court observes that it has been repeatedly held that where attorney’s fees are provided by statute, a pro *60 se litigant who is not an attorney is not entitled to an award of such fees (Gonzalez v Kangas, 814 F2d 1411 [9th Cir 1987]; Smith v DeBartoli, 769 F2d 451 [7th Cir 1985], cert denied 475 US 1067 [1986]; Turman v Tuttle, 711 F2d 148 [10th Cir 1983]; Owens-El v Robinson, 694 F2d 941 [3d Cir 1982]; Cofield v City of Atlanta, 648 F2d 986 [5th Cir 1981]). That view has been applied even in the context of an IDEA proceeding, and notwithstanding that the litigant had légal training to the extent that he was a paralegal (Heldman v Sobol, 846 F Supp 285, 290 [SD NY 1994]).
In Heldman (supra), the court addressed a challenge to the impartiality of Hearing Officers reviewing school district decisions regarding educational programs for handicapped children. As related to the issue of a fees award, the court therein stated: “While it is undisputed that paralegal work may qualify for fee shifting awards, no such payment can be awarded to plaintiff for his own work as a paralegal in his own case. Otherwise time spent by clients in support of their own litigation would become a major additional cost to be imposed on their adversaries, thereby adding a currently absent additional encouragement to litigation generally — something there is no suggestion that Congress intended in enacting fee-shifting legislation.” (Heldman v Sobol, supra, at 290.) Having seen that the bar against statutory fee awards for pro se litigants applies in IDEA proceedings, the central question is whether such a rule should deny fees to petitioners in a case brought under the EIP. To answer that question, the court turns to the view espoused on the pro se attorney-litigant fee issue by the Nation’s highest Court.
Kay v Ehrler (supra) involved an application for attorney’s fees in a civil rights action against the Kentucky Board of Elections. In the face of that board’s refusal to list Kay’s name on a primary ballot for President of the United States, he commenced a civil rights action against the board. When he prevailed on the merits in the action, Kay sought a counsel fee award for his own time under 42 USC § 1988 (b). That application was denied by the Federal District Court, a decision affirmed on appeal to the Circuit Court (900 F2d 967 [6th Cir 1990]). On Kay’s appeal to the Supreme Court, the denial of counsel fees was upheld.
In reaching its determination, the Supreme Court focused upon the manner in which the purpose of the statute involved therein could best be accomplished. Specifically, the Court stated that retention of independent counsel advances the *61 statutory goal of ensuring that meritorious claims are successfully prosecuted. The Court’s language is instructive to the issue presented at bar. “A rule that authorizes awards of counsel fees to pro se litigants — even if limited to those who are members of the bar — would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.” (Kay v Ehrler, supra, 499 US, at 438 [emphasis supplied].) Although petitioners offer their views as to the manner in which their situation is factually distinguishable from that of the attorney-litigant in Kay v Ehrler, they do not dispute the applicability of its holding in IDEA cases in general, and under the EIP in particular.
This court’s own review of the EIP leads it to conclude that a similar rule should apply to counsel fee applications under Public Health Law § 2549 (7) (b). Clearly, the issues involved in a proceeding related to the special educational needs of a disabled child are legally and factually complex and emotionally charged. Notwithstanding that a party to such a proceeding may be an attorney, he or she may not be able to maintain that level of objectivity that is required in order to achieve the successful presentation of claims within the ethical constraints placed upon all counsel by virtue of that attorney’s personal stake in the proceedings and overwhelming concern for achieving the maximum results for his or her child. These concerns were noted by the Supreme Court in Kay v Ehrler (supra, at 437), where that Court said that a pro se attorney-litigant “is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom”. The legitimacy of these concerns is demonstrated at bar, where, despite the successful prosecution of the claims asserted by petitioners, it is clear from the ALJ’s assessment of Mr. Mayerson’s involvement as counsel for petitioners that, at least in certain respects, his personal feelings for his child may have interfered with his ability to carry out the role of detached and objective counsel.[2]
*62 In deciding that the rule enunciated in Kay v Ehrler (supra) was applicable to this proceeding, the ALJ specifically held that “[t]he policy considerations for a rule creating incentive to retain independent counsel in every case remain valid” in EIP proceedings (petitioners’ exhibit A, decision and order, dated May 23, 1997, at 5). Given this court’s own view that Kay v Ehrler should be applied in this case, the court concludes that there is a rational and reasonable basis for the ALJ’s decision that petitioners are not entitled to an award of counsel fees if Mr. Mayerson was representing himself and his wife.
B. Petitioners’ Self-Representation
In reaching his decision on the fee issue, the ALJ first considered the position proffered by petitioners to the effect that each of them individually retained GMM and that together they retained GMM to represent their child. Specifically, he noted petitioners’ argument that their retention of GMM is evidenced by the existence of an attorney-client relationship between them and the firm. As observed by the ALJ, in support of that contention petitioners “point [ed] to facts such as the use by Mr. Mayerson of the firm’s letterhead in nearly all of the correspondence to the [Respondent, the listing of the firm’s name in the hearing transcript on six of the nine hearing days, the presence of a firm associate on several of the hearing days, and the use of members of the firm for consultation concerning issues related to the hearing” (petitioners’ exhibit A, decision and order, dated May 23, 1997, at 3).
This argument was rejected by the ALJ in the Fee Decision. In explaining his view, the ALJ first described the role played by Mr. Mayerson, including his work conducting the examination of witnesses other than himself, and the presentation of almost the totality of the written arguments submitted during the hearing process. He further observed that notwithstanding the limited input of some other GMM attorneys, “a true attorney-client relationship is negated by one overriding fact: Mr. Mayerson, as a partner in the firm, is an integral part of [GMM] [and] is identified with his law firm in a very real legal sense” (petitioners’ exhibit A, op. cit., at 3). According to the ALJ, that “overriding fact” compelled the legal conclusion that “[i]f Mr. Mayerson can be seen as ‘retaining’ that firm, he has retained himself’- (ibid.).
*63 As to Mrs. Mayerson’s retention of GMM in her own right, and petitioners’ alleged retention of GMM in behalf of their child, the ALJ reached the same conclusion on different grounds. In particular, the ALJ ruled that Mr. and Mrs. Mayerson, and not their child, are the named petitioners in the proceeding, and their interests are both “identical and inseparable” (petitioners’ exhibit A, op. cit., at 4). Insofar as relates to the purported retention of GMM for the child, relying upon the decision in Rappoport v Vance (812 F Supp 609 [D Md 1993], appeal dismissed 14 F3d 596 [4th Cir 1994]) the ALJ held that the child was represented by his attorney parent, which “is, in effect, pro se representation” (petitioners’ exhibit A, decision and order, dated May 23, 1997, at 4).
In reviewing these determinations by the ALJ, the court likewise addresses the retainer of GMM by each of the petitioners separately. That analysis supports the ALJ’s conclusion.
From a practical standpoint, it cannot be credibly disputed that Mr. Mayerson acted as counsel for himself, despite his claim to the contrary. As found by the ALJ, he conducted all of the witness examinations with the exception of his own, while also submitting almost all of the written arguments to the court. Although he attempts to paint a picture of GMM having provided its firm resources, including the legal work of other attorneys, it is evident that those other services were extremely limited in duration and scope, and were primarily to assist in those areas where it would have been impracticable or ethically questionable for Mr. Mayerson to act directly. For instance, Mr. Mayerson brought in a GMM associate to conduct his own examination. However, viewed in its entirety, the role of Mr. Mayerson was so broad in scope as to constitute self-representation under any definition of that term.
Moreover, upon consideration of laws regarding partnerships in general and ethics rules governing the practice of law by partners in a firm, it cannot be doubted that when he “retained” GMM, Mr. Mayerson was merely retaining himself. These standards make clear that contrary to the effort made by petitioners, Mr. Mayerson cannot be separated from GMM as regards an application to obtain an award of legal fees in this case.
As relates to partnerships, it is the law of this State that “[e]very partner is an agent of the partnership for the purpose of its business” (Partnership Law § 20 [1]). Since it is conceded that Mr. Mayerson was engaged in the legal business of GMM at the time that he conducted the Hearing, it cannot be denied that he was doing so as the agent for all of its partners, includ *64 ing himself (see, Besen v Kelley, 83 Misc 2d 362 [Sup Ct, Westchester County 1975]). Thus, when he appeared at the Hearing, not merely for the limited purpose of testifying as a witness at a proceeding at which he was represented by another attorney or firm, but in the role of “lead counsel”, as determined by the ALJ, Mr. Mayerson was acting as the firm. Accordingly, GMM’s “representation” of Mr. Mayerson was nothing more or less than pro se representation of Mr. Mayerson.
So too do the rules of attorney conduct support the ALJ’s finding that Mr. Mayerson was acting as a pro se attorney-litigant when he acted as lead counsel for petitioners at the Hearing. For example, Code of Professional Responsibility DR 5-101 (B) (22 NYCRR 1200.20 [b]) provides, in relevant part, that “[a] lawyer shall not act, or accept employment that contemplates the lawyer’s acting, as an advocate before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on behalf of the client”. This rule has been applied to disqualify an entire law firm where it was apparent that one or more of its members would be called as witnesses concerning facts material to the issues in the action (see, North Shore Neurosurgical Group v Leivy, 72 AD2d 598 [2d Dept 1979]). Similarly, Code of Professional Responsibility DR 5-102 (22 NYCRR 1200.21), which requires the withdrawal of an attorney who learns he ought to be called as a witness for a client after he commences his representation, has been invoked to disqualify a firm when one of its members would have to be called as a witness in a proceeding (see, Matter of Bartoli, 143 AD2d 830, 831 [2d Dept 1988]).
As each of the cited laws, rules and cases makes clear, law firms are viewed as single entities in a variety of business and ethical settings. No basis was demonstrated to the ALJ, and none has been presented to this court, for treating GMM separately from Mr. Mayerson, one of its partners, in determining the role undertaken by him when he acted as lead counsel in its “representation” of petitioners. Accordingly, the court rejects petitioners’ contention that the ALJ had no rational or reasonable basis for concluding that Mr. Mayerson acted in a pro se capacity with regard to his claimed retention of GMM.
The same result applies when the court considers the effect of the rule espoused in Kay v Ehrler (supra) upon the facts at bar. As set forth above, the Court’s concern in Kay v Ehrler about the need for detached and independent counsel is equally relevant to a proceeding brought under the statutes providing for special educational services for disabled children. While *65 petitioners argue that Kay v Ehrler may be distinguished from the facts at bar, the court does not agree. Even accepting petitioners’ claim that Mr. Mayerson sought the advice of other attorneys from his firm, including a well-known and respected named partner, it cannot be denied that such advice came, not from a wholly independent attorney, but from a member of Mr. Mayerson’s own firm, who, out of concern and compassion for the child of one of the firm’s other partners, may not have exercised that degree of objectivity which the Supreme Court contemplated as being required in all cases. Thus, the court does not view this case as being distinguishable in any respect from Kay v Ehrler as relates to the policy considerations upon which the Supreme Court reached its decision.
No different conclusion is arrived at insofar as relates to the retention of GMM by Mrs. Mayerson. As to her legal fees, the court agrees with the ALJ that her legal interests are entirely identical to those of Mr. Mayerson and inseparable therefrom. Both of these parents commenced this proceeding and were the named petitioners. Both had as their goal the obtaining of special educational services for their child, based upon their view that the limited services initially offered by the County were woefully inadequate to meet their child’s needs. Both parents relied upon the same testimony and documentary evidence at the Hearing, and both were represented by the same “lead counsel”. Under such circumstances, it cannot be credibly maintained that Mrs. Mayerson had, as a matter of law, separately retained either GMM or the entirety of that firm with the exception of her husband. Consequently, the ALJ correctly determined that no fee award should be made to Mrs. Mayerson for the legal work done by either her husband or the other members of GMM who provided some of the services related to the Hearing.
Similarly, the court agrees with the ALJ’s conclusion as to the request for a fees award in behalf of the child. While petitioners argue that the child could not retain the firm on his own, thereby requiring them to retain GMM in his place, this assertion is obviously lacking in merit.
As a preliminary matter, and as noted by the ALJ, Mr. and Mrs. Mayerson are the only named petitioners at bar. Thus, their child was not a party to the proceeding and was not separately entitled to be heard or represented at the hearing.
Further, as held by the court in Rappaport v Vance (812 F Supp, supra, at 612), when a child is represented by a parent who is an attorney at an IDEA proceeding, such representation *66 constitutes pro se representation which does not warrant an award of attorney’s fees. As noted by the court in Rappaport, this conclusion follows “[b]ecause the language of the statute identifies the parent with the child, and because of the close, natural relationship between parent and child” (supra). This court agrees with that conclusion, based upon the nature of the parent-child relationship and because the EIP creates a similar identity between parent and child in relation to the procedures available to a parent to fight for better educational resources for a disabled child (see, Miller v West Lafayette Community School Corp., 665 NE2d 905 [Ind 1996] [following Rappaport v Vance and holding that attorney-parent is not entitled to fee award in IDEA proceeding]; cf., McLaughlin v Boston School Comm., 976 F Supp 53 [D Mass 1997] [in action to gain admission to school under 42 USC § 1983, student’s attorney-parent entitled to fee award because, unlike IDEA, 42 USC § 1988 does not contain language identifying the interests of parent and child]).
Nor is there any merit to petitioners’ alternative argument that they should be granted a fee award compensating them for the services provided by all other attorneys and support staff who worked on this case. This argument is rejected because it is clear that any counsel fee award will accrue to the financial benefit of both petitioners. Specifically, if a fee award was granted, Mr. Mayerson would be entitled to a share of it (see, Partnership Law § 12 [1] [“All property originally brought into the partnership stock or subsequently acquired * * * is partnership property”]; see also, Partnership Law §40 [1] [“Each partner shall * * * share equally in the profits and surplus remaining after all liabilities”]), which would have the effect of converting such an award into a grant of fees to a lawyer representing himself, contrary to existing law, as discussed above.
Petitioners’ attempt to avoid this conclusion is unavailing. In this regard, they argue that Mr. Mayerson is not a member of either the Compensation or Executive Committees of GMM, which determine compensation issues, and that “there is no formula or arrangement in [his] firm that partners receive a percentage of what they ‘bring in’ ” (reply affirmation 5). This argument, perhaps intentionally, begs the question. Even if Mr. Mayerson will not receive a specific portion of the fee award for “making rain” by bringing his own case into the firm, he does not deny that since any fee would become partnership property, he would be entitled to his share of that property *67 pursuant to the terms of the partnership agreement (see, Partnership Law § 50).[3] Moreover, because Mr. Mayerson did not offer the ALJ any proof that he would not obtain any share of a fee award if one was granted in this case, the ALJ properly concluded that the legal services provided to petitioners by GMM and Mr. Mayerson constituted pro sé representation as to which an award of counsel fees may not be made.
Finally, this court’s view of the counsel fees issue comports with fairness in the administration of justice and the application of Public Health Law § 2549 (7) (b), by applying the bar against attorney fee awards to all pro se litigants, regardless of their education, training and experience. Contrary to petitioners’ position, “fairness is not served * * * by awarding fees to the [parent] of a disabled child simply because he [or she] is an attorney” (Rappaport v Vance, supra, 812 F Supp, at 612).

. See, 20 USC § 1400 et seq.

. As noted by the ALJ, despite the fact that Mr. Mayerson “did an overall excellent job of presenting his case” (petitioners’ exhibit A, decision and *62 order, dated May 23, 1997, at 5), certain “avoidable problems” (id., n 2) arose. More particularly, the ALJ believed “that this nine day hearing would have reached only three to five days if presented by counsel on behalf of the Petitioners who was detached and independent” (ibid.).

. Insofar as relevant, Partnership Law § 50 provides that “[t]he property rights of a partner are (a) his rights in specific partnership property * * * [and] (b) his interest in the partnership”.